10-689.101-RSK                                                    September 3, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. SWIFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 689 |
| | ) | |
| MEDICATE PHARMACY, INC. and | ) | |
| MICHAEL SCHALTENBRAND, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| DELIVERMED HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 1874 |
| | ) | |
| MEDICATE PHARMACY, INC., MICHAEL | ) | |
| SCHALTENBRAND, and JOE D. SIDDLE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Before the court are the defendants' motions to dismiss, stay, or transfer plaintiffs' complaints. For the reasons explained below we grant defendants' motions in part and transfer these consolidated cases to the United States District Court for the Southern District of Illinois. Defendants' remaining requests for relief are denied without prejudice to renewal in the Southern District.

## BACKGROUND

These consolidated cases arise out of the parties' former business relationship. Plaintiff DeliverMed Holdings, LLC ("DeliverMed") is a company based in Kenilworth, Illinois that solicits customers for pharmacies. (Compl. ¶ 11.)[1] Plaintiff Mark Swift is Delivermed's president and a former "employee" of defendant Medicate Pharmacy, Inc. ("Medicate"), a pharmacy based in St. Clair County in southwestern Illinois. (Id. at ¶¶ 9-10.) In 2005 DeliverMed agreed to solicit mail-order customers for Medicate, in exchange for which Medicate agreed to pay Swift 40% of its profits from the mail-order prescriptions that DeliverMed solicited. (Id. at ¶ 12-14.)[2] In late 2007 Medicate's president and owner, defendant Michael Schaltenbrand, proposed to amend the parties' agreement to reduce Swift's commissions from 40% to 35% while granting Swift a 35% stake in a new entity formed by merging DeliverMed's mail-order prescription business and Medicate's retail pharmacy business. (Id. at ¶ 16.) As part of the proposed agreement DeliverMed would transfer to the new entity its rights in the name "DeliverMed," its "tagline" ("Right at Home"), its logo (a pharmacy mortar-and-pestle superimposed on a design representing a

---

[1] Because Mark Swift's complaint in the 10-cv-689 case is short on facts and long on legal conclusions, we will refer to DeliverMed's complaint for the background facts except as otherwise noted.

[2] Swift's roles as DeliverMed's president and Medicate's "employee" are not clearly delineated in the complaint. So, it is unclear in what capacity he received these payments, or whether he performed other services for Medicate besides those that DeliverMed contracted to provide.

house), and certain other assets. (Id. at ¶¶ 21-22.) Starting on January 1, 2008 Swift's commissions were reduced to 35%, and drafts of a proposed operating agreement for the new entity were circulated among the parties (including defendant Joe Siddle, another Medicate employee). (Id. at ¶ 19.) But the parties did not execute a final contract memorializing the proposed merger agreement and Swift has not received any ownership interest in any entity. (Id. at ¶¶ 20, 23.)

On September 13, 2009 Swift received a letter from Schaltenbrand "terminating . . . [Swift] from all association with Medicate Pharmacy, Inc." (Id. at ¶ 24.) On or about November 4, 2009 Swift filed a claim against Medicate with the Illinois Department of Labor ("IDOL") seeking to recover unpaid wages and commissions. (Id. at ¶¶ 25-27; see also Wage Claim Application, attached as Ex. 1 to Defs.' Mot. to Dismiss (10-cv-1874).) On that same date Swift's attorney sent Schaltenbrand a letter demanding that Medicate cease using "DeliverMed's name in any manner." (Compl. ¶ 31; see also Letter from C. Kennedy to M. Schaltenbrand, dated Nov. 4, 2009, attached as ex. E to Pl.'s Compl.) Notwithstanding the cease-and-desist letter, DeliverMed alleges that defendants have continued to use DeliverMed's name, tagline, and logo on various promotional materials. (Compl. ¶¶ 37-41.) Also, Medicate posted on its website a notice falsely accusing

- 4 -

DeliverMed of "illegally" obtaining Medicate's customer list and using it to solicit Medicate's customers. (Id. at ¶¶ 42-50.)

The parties' dispute has spawned three lawsuits besides Swift's still-pending IDOL claim. On November 10, 2010 Medicate sued Swift and DeliverMed in Illinois state court alleging tortious interference and separately requesting a judgment declaring that neither Swift nor DeliverMed own any interest in the company. See Medicate Pharm., Inc. v. Swift, 09-MR-296 (Ill. Cir. Ct. 2009). On March 2, 2010 Swift filed his complaint in Swift v. Medicate Pharm. Inc., Case No. 10-cv-689 (N.D. Ill. 2010), alleging that Medicate and Schaltenbrand (as Swift's "employers") have violated provisions of the Fair Labor Standards Act (Counts I-III), the Illinois Minimum Wage Law (Count IV), and the Illinois Wage Payment and Collection Act (Count V). In a separate count (Count VI) labeled "Fraud, Breach of Contract and Detrimental Reliance" Swift seeks damages in excess of $2 million stemming from the defendants' refusal to grant Swift stock in "Medicate Pharmacy, Inc." per the parties' agreement. On March 24, 2010 DeliverMed filed its complaint in DeliverMed v. Medicate Pharm. Inc., Case No. 10-cv-1874 (N.D. Ill. 2010), alleging trademark infringement and various business torts.[3] That case was originally assigned to Judge

---

[3/] DeliverMed's eight-count complaint alleges: common law service mark infringement and unfair competition (Count I), unfair competition under Section 43(a) of the Lanham Act (Count II), violation of the Illinois Deceptive Trade Practices Act (Count III), violation of the Illinois Consumer Fraud and Deceptive Practices Act (Count IV), trademark dilution (Count V), business defamation (Count VI), commercial disparagement (Count VII), and separately requests

- 5 -

Der-Yeghiayan, who conducted a hearing on DeliverMed's motion for a temporary restraining order ("TRO"). Based upon defendants' agreement to remove the phrases "DeliverMed" and "Right at Home" (but not the disputed logo) from its website, Judge Der-Yeghiayan denied DeliverMed's motion as moot. After the TRO hearing the case was transferred to this court and consolidated with Case No. 10-cv-689 on DeliverMed's unopposed motion.

## **DISCUSSION**

The defendants in both cases have now moved to dismiss the complaints for "lack of subject matter jurisdiction" or *forum non conveniens*. Alternatively, they ask us to stay the cases pursuant to Colorado River Water Conservation Distr. v. United States, 424 U.S. 800, 817 (1976), or else transfer them to the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). If our subject matter jurisdiction were really in doubt, we would address that issue first. But we are not persuaded that plaintiffs' federal claims are frivolous, even if defendants' Rule 12(b)(6) arguments ultimately have merit. See Avila v. Pappas, 591 F.3d 552, 553 (7th Cir. 2010) ("When the federal theories are insubstantial in the sense that prior decisions inescapably render the claims frivolous, there is no federal jurisdiction."). If we conclude that transfer to the Southern District of Illinois is appropriate, then that court should decide the merits of those

---

injunctive relief (Count VIII).

- 6 -

arguments, as well as defendants' *forum non conveniens* and abstention arguments.[4]

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that venue is proper here and in the Southern District of Illinois. See, e.g., Amorose v. C.H. Robinson Worldwide, Inc., 521 F.Supp.2d 731, 734 (N.D. Ill. 2007) (the moving party must show that venue is proper in the transferor and transferee districts). Therefore, we may transfer this action if (1) the Southern District of Illinois is more convenient for the parties and witnesses, and (2) transfer would serve the interests of justice. Id. "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir. 1986).

   **1. Convenience Factors**

"To evaluate the convenience of one venue over another, courts look at the following five factors: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties,

---

[4] Defendants' *forum non conveniens* and abstention arguments request different relief on essentially the same ground: deference to the ongoing state-court litigation between these same parties.

and (5) the convenience of the witnesses." Jaramillo v. DineEquity, Inc., 664 F.Supp.2d 908, 913-914 (N.D. Ill. 2009) (citation and internal quotation marks omitted).

*a. Plaintiffs' Choice of Forum*

"A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." Amorose, 521 F.Supp.2d at 735. Swift is a resident of, and DeliverMed's principal place of business is in, this District. (Compl. (10-cv-689) ¶ 2; Compl. (10-cv-1874) ¶ 2.) However, "the weight given to the plaintiff's choice of forum is lessened if the chosen forum shares relatively weak connections with the operative facts giving rise to the claim." Von Holdt v. Husky Injection Molding Systems, Ltd., 887 F.Supp. 185, 188 (N.D. Ill. 1995). We turn, then, to the connection between plaintiffs' chosen forum and the facts giving rise to their claims.

*b. Situs of Material Events*

Defendants contend that a substantial portion of the events at issue in this case occurred in the Southern District of Illinois, where defendants are located. We will begin with Swift's breach-of-contract claim because many of plaintiffs' claims flow, to one degree or another, from the proposed merger. "[I]n a breach of contract case, the situs is where the business decisions causing the breach occurred . . . ." J. Wilderman Autoplex Corp. v. Norton, No. 09-cv-0154-MJR, 2009 WL 1230016, *3 (N.D. Ill. May 1,

- 8 -

2009). The complaint alleges that Schaltenbrand proposed the merger, and both Schaltenbrand and Siddle contend that their "communications" with Swift and/or DeliverMed about the transaction occurred in the Southern District of Illinois. (Aff. of M. Schaltenbrand ¶ 8; Aff. of J. Siddle ¶ 12.) Swift only vaguely avers that he met with the defendants on a quarterly basis "to discuss the business arrangements of Medicate Pharmacy, Inc.'s mail order business." (Aff. of M. Swift ¶ 25.)[5] It is undisputed that the parties conducted business, the question is whether they agreed to do so as partners or as shareholders in the same company. It appears that the relevant discussions took place in the Southern District of Illinois and, more importantly, that is where defendants made the "business decisions" that Swift is challenging. J. Wilderman Autoplex Corp., 2009 WL 1230016, *3. We likewise conclude that the material events giving rise to Swift's employment-law claims occurred in the Southern District of Illinois. Throughout the relevant time period Swift alleges that he was a Medicate employee. Although it appears that Swift did not physically work in Medicate's offices, he is nevertheless challenging employment decisions that the defendants made in St. Clair County.

---

[5]/ Plaintiffs devote only one paragraph of their 14-page response to addressing defendants' § 1404(a) arguments and they have not cited any relevant case law. Most of Swift's lengthy declaration is devoted to rehashing the complaints' allegations.

- 9 -

The analysis with respect to DeliverMed's trademark-infringement and unfair-competition claims is less clear cut. "[I]n trademark infringement and unfair competition claims, the 'wrong' is considered to have occurred where the 'passing off' occurs." WellPet, LLC v. Midwestern Pet Foods, Inc., No. 1:09-cv-1556, 2009 WL 5111790, *2 (M.D. Pa. Dec. 16, 2009). This generally means that the situs is where the infringing product is sold, even if the defendant is located elsewhere. See, e.g., id. In infringement litigation involving Internet websites courts have tended to emphasize the location where the website is maintained — otherwise the alleged tort would be too diffuse to pinpoint. See, e.g., Gucci America, Inc. v. Frontline Processing Corp., No. 09 Civ. 6925(HB), 2010 WL 2541367, *5 (S.D.N.Y. June 23, 2010) (collecting cases). We infer from DeliverMed's complaint and Swift's affidavit that many of the prescription inserts referring to "Medicate Pharmacy DeliverMed" were sent to Medicate customers in this District. (Compl. (10-cv-1874) ¶ 38; Aff. of M. Swift ¶¶ 26-27.) But insofar as DeliverMed's claims are based upon Medicate's use of DeliverMed's marks on its website, (Compl. (10-cv-1874) ¶ 41), the alleged "passing off" occurred in St. Clair County. (Aff. of M. Schaltenbrand ¶ 14.) In WellPet, where the allegedly infringing sales occurred throughout the United States, the court emphasized the single location where the defendant made the business decisions leading to those sales. See WellPet, LLC,

2009 WL 5111790, *2 ("[T]he fact that many, if not all, of the decision-making regarding the alleged infringing pet food packing occurred at Defendant's headquarters in Indiana militates in favor of transfer to Indiana."). We think the WellPet court's reasoning is persuasive and supports transferring this case to the Southern District of Illinois. (Aff. of M. Schaltenbrand ¶ 7 (stating that decisions concerning Medicate's advertisements are made in St. Clair County).) We also think it is significant that in moving to transfer and consolidate these proceedings DeliverMed emphasized that its claims arise out of the parties' four-year business relationship, even though the specific conduct it is challenging occurred only at the tail-end of that relationship. (Mot. to Trans. Proceeding Pursuant to L.R. 40.4 at ¶¶ 3-7.) We have already concluded that the Southern District of Illinois has a greater connection to that relationship.

In sum, we conclude that the situs of material events strongly supports transfer.

### c. Relative Ease of Access to Sources of Proof

Plaintiffs do not contest defendants' assertion that the documents relevant to Swift's employment with Medicate are located in the Southern District of Illinois. And again, all of plaintiffs' claims stem from decisions that Medicate and its senior management made in St. Clair County. Records of internal communications at Medicate are likely to be significant sources of

- 11 -

relevant evidence in this case. But transferring the records to this District — physically or electronically — would not be likely to impose a major burden on the defendants. We conclude that the relative ease of access to sources of proof supports transfer only marginally, if at all.

        *d. Convenience of the Parties and Witnesses*

Plaintiffs do not contend that transfer would cause them any particular hardship or inconvenience. Swift does not challenge defendants' contention that he "regularly traveled to Medicate's facilities within St. Clair County, Illinois as part of the performance of his duties with Medicate." (Aff. of M. Schaltenbrand ¶ 9; Aff. of J. Siddle ¶ 13.) On the other hand, Schaltenbrand and Siddle do not dispute that they made regular business trips to meet with Swift here in this District. Both individual defendants hint at possible objections to personal jurisdiction in this District, stating that they appeared here only as Medicate employees and not in their personal capacities. (Aff. of M. Schaltenbrand ¶ 5; Aff. of J. Siddle ¶ 5.) But they waived any such objections by failing to raise them in their motions to dismiss. See Fed. R. Civ. P. 12(g)(2). Transferring the case to the Southern District would only shift the travel burden from defendants to plaintiffs. This factor is neutral.

Defendants state that they will rely on non-party witnesses located in Southern Illinois to support their contentions that (1)

- 12 -

Medicate (not DeliverMed) owns the mortar-and-pestle logo, and (2) Medicate has not used the terms "DeliverMed" or "Right at Home" "following the breakdown of the partnership negotiations." (Aff. of M. Schaltenbrand ¶ 16; Aff. of J. Siddle ¶ 14.) But they have not identified specifically who these witnesses are (or how many are likely to testify), making it difficult to assess how much inconvenience litigation in this District will entail. Cf. Vandeveld v. Christoph, 877 F.Supp. 1160, 1167-68 (N.D. Ill. 1995) ("The party seeking transfer must clearly specify the key witnesses to be called and make a general statement of their testimony."). The only non-party witness defendants identify by name is Larry Schaltenbrand, Medicate's accountant, who may testify about Swift's compensation. (Aff. of M. Schaltenbrand (10-cv-689) ¶ 11); see Applied Web Systems, Inc. v. Catalytic Combustion Corp., No. 90 C 4411, 1991 WL 70893, *5 (N.D. Ill. Apr. 29, 1991) ("In weighing the relative inconvenience of witnesses, the Court generally assigns little weight to the location of employee-witnesses."). But whereas defendants' discussion of this factor is incomplete, plaintiffs' brief ignores this factor altogether. See United States v. Hook, 195 F.3d 299, 310 (7th Cir. 1999) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation and internal quotation marks omitted). We conclude that this factor is neutral.

- 13 -

### 2. Public Interest Factors

"The public interests concern the litigation's impact on the court system, and include 'the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale.'" McCants v. C.H. Robinson Worldwide, Inc., Nos. 06 C 6556, 06 C 6634, 2007 WL 1650103, *1 (N.D. Ill. June 4, 2007) (quoting Amoco Oil Co. v. Mobil Oil Corp., 90 F.Supp.2d 958, 961-62 (N.D.Ill. 2000)).[6] Defendants candidly point out that on average litigation moves more quickly to disposition here than in the Southern District of Illinois. (Defs.' Mem. (10-cv-689) at 14.) But the difference is not substantial. (Id. (citing statistics showing a difference of approximately four months).) The fact that most of the relevant events occurred in St. Clair County supports the conclusion that the public interest would be served by conducting litigation in the Southern District of Illinois. See, e.g., R.E. Davis Chemical Corp. v. International Crystal Laboratories, Inc., No. 03 C 7288, 2004 WL 2191328, *7 (N.D. Ill. Sept. 27, 2004) ("New Jersey is the situs of material events, and the administration of justice is served more efficiently when the action is brought before a court that is closer to the action.") (citation and internal quotation

---

[6]/ We presume that the two courts are equally familiar with the applicable law.

marks omitted). Once again, plaintiffs have not articulated any countervailing considerations.

In sum, the situs of material events significantly favors transfer and lessens the deference we would ordinarily pay to the plaintiffs' forum choice. Relative ease of access to sources of proof is near neutral, and witness convenience is neutral. Plaintiffs have not challenged defendants' argument that transfer would be in the public interest. The plaintiffs have made almost no effort to show any convenience factors favoring this District. The defendants have made an impressive argument supporting at least some of the factors favoring the Southern District. We conclude that defendants have met their burden to show that the Southern District of Illinois is the more convenient forum for this litigation.

## CONCLUSION

Defendants' motions to dismiss, stay, or transfer plaintiffs' complaints are granted in part. We hereby direct the Clerk of Court to transfer these consolidated cases forthwith to the United States District Court for the Southern District of Illinois. Defendants' remaining requests for relief are denied without prejudice to renewal in the Southern District of Illinois.

- 15 -

DATE:      September 3, 2010

ENTER:     _____
           John F. Grady, United States District Judge